UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 1:12-CV-11817-FDS

NICHOLAS COX,
        Plaintiff,

v.

SERGEANT DETECTIVE PAUL MURPHY, POLICE OFFICER SEAN FLAHERTY, DETECTIVE BRIAN SMIGIELSKI, and THE CITY OF BOSTON,
        Defendants.

**DEFENDANT CITY OF BOSTON'S MEMORANDUM OF
LAW IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT**

## I. INTRODUCTION AND FACTUAL BACKGROUND

Plaintiff Nicholas Cox claims that three Boston police officers, Sergeant Detective Paul Murphy, Police Officer Sean Flaherty, and Detective Brian Smigielski, violated his constitutional rights by using excessive force during the course of his valid arrest on February 22, 2010.[1] In Count III of his Complaint, Plaintiff alleges that the City of Boston (City) violated 42 U.S.C. § 1983 because it demonstrated a custom and policy of deliberate indifference to the rights of citizens by (1) tolerating officers' use of unreasonable force; (2) failing to discipline officers who use unreasonable force; (3) failing to adequately supervise and investigate officers; and (4) failing to adequately train officers in the proper use of force. (See Complaint ("Compl.") (Docket No. 1) ¶ 37(a)-(d).) These theories are unsupported by fact or law, and the City now moves for summary judgment.

---

[1] In support of its motion for summary judgment, the City incorporates by reference <u>Defendant City of Boston's Local Rule 56.1 Statement of Facts and Supporting Exhibits</u> ("SOF"), filed herewith.

1

Plaintiff's theory of municipal liability relies on the proposition ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮, and that the City's alleged failure to train, supervise, investigate, and discipline its officers in the past led to the officers' alleged use of excessive force against the Plaintiff on February 22, 2010. (See Compl. ¶¶ 27-31.) The record shows, however, that Plaintiff's allegations are factually inaccurate: the City trains its officers in use of force and maintains policies governing the circumstances in which certain types of force may be used. The City also maintains supervisory policies requiring officers who utilize force to write use of force reports to their supervisor, who then conducts an initial investigation.

Plaintiff's allegation that the City failed to investigate or discipline its officers is similarly unavailing. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ And Plaintiff admits that Smigielski did not use excessive force against him. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ The City also maintains disciplinary policies, including a truthfulness policy that may subject an officer to termination if violated. Overall, the record makes clear that the City has robust policies for training, supervising, investigating, and disciplining its police officers regarding use of force. Accordingly, because Plaintiff has no evidence that the City's policies were substandard or that the City had a custom of ignoring its policies, there is no basis to hold the City liable, and summary judgment in favor of the City is appropriate.

---

[2] IAD uses the following terminology: "a. sustained (investigation disclosed sufficient evidence to support allegations in the complaint); b. not sustained (investigation failed to prove or disprove the allegations); c. exonerated (the action complained of did occur, but investigation revealed that action was proper, legal and reasonable); or d. unfounded (investigation revealed that conduct did not occur)." (SOF ¶ 79.)

A. **Sergeant Detective Murphy's Internal Affairs History**



■■■ (SOF ¶ 1.) ■■■ (SOF ¶¶ 3-4.) ■■■ (SOF ¶ 2.) ■■■ (SOF ¶ 1.) ■■■ (SOF ¶¶ 5, 7.) ■■■ (SOF ¶ 6.) ■■■ (SOF ¶ 8.) ■■■ (SOF ¶ 85.) ■■■ (SOF ¶¶ 86-93.) ■■■ (SOF ¶¶ 86-93.)

■ ■■■ (SOF ¶ 86.)

■ ■■■ SOF ¶ 87.)

■ ■■■ (SOF ¶ 88.)

■ ■■■

██████████████████████████ (SOF ¶ 89.)

██████████████████████████ (SOF ¶ 90.)

██████████████████████████ (SOF ¶ 91.)

██████████████████████████ (SOF ¶ 92.)

██████████████████████████ (SOF ¶ 93.)

██████████████████████████

**B.    Police Officer Flaherty's Internal Affairs History**

██████████████ (SOF ¶ 9.) ████████████

████ (SOF ¶¶ 10-11.) ████████████

████ (SOF ¶ 12.) ████████████████ (SOF ¶ 12.)

---

[3] ████████████████████ (SOF ¶¶ 5, 12.)



(SOF ¶ 94.)

(SOF ¶ 94.)

(SOF ¶ 95.)

(SOF ¶ 96.)

[4]

## II. ARGUMENT

### A. Summary Judgment Standard

Summary judgment is appropriate when the moving party shows that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A 'genuine' issue is one that could be resolved in favor of either party, and a 'material fact' is one that has the potential of affecting the outcome of the case." Calero-Cerezo v. U.S. Dep't of Justice, 355 F.3d 6, 19 (1st Cir. 2004) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248-250 (1986)). "Essentially, Rule 56[ ] mandates the entry of summary

---

[4] Plaintiff admits that Defendant Smigielski did not use excessive force against him. (SOF ¶ 31.)

judgment 'against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.'" Coll v. PB Diagnostic Sys., 50 F.3d 1115, 1121 (1st Cir. 1995) (quoting Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986)).  Here, because Plaintiff has no evidence that the City had unconstitutional policies or customs, the City seeks summary judgment on Count III.

### B. The City Is Entitled To Summary Judgment Because Plaintiff Cannot Prove That The City Is Liable Under 42 U.S.C. § 1983.

In Count III, Plaintiff alleges that the City is liable pursuant to 42 U.S.C § 1983 because the Plaintiff's constitutional rights were infringed as a result of the City's policy or custom.  A municipality "may not be sued under § 1983 for an injury inflicted solely by its employees or agents."  Monell v. Dep't of Soc. Servs. of City of New York, 436 U.S. 658, 694 (1978).  "[L]iability can be imposed on a local government only where that government's policy or custom is responsible for causing the constitutional violation or injury."  Kelley v. LaForce, 288 F.3d 1, 9 (1st Cir. 2002) (citing Monell, 436 U.S. at 690-91).  Official municipal policy may include not just published rules but also practices "'so persistent and widespread as to practically have the force of law.'"  Sonia v. Town of Brookline, 914 F.Supp.2d 36, 44 (D. Mass. 2012) (quoting Connick v. Thompson, 131 S.Ct. 1350, 1359 (2011)).  A municipality may be held liable only for "action[s] for which the municipality is actually responsible."  Pembaur v. City of Cincinnati, 475 U.S. 469, 479 (1986).[5]

Here, Plaintiff claims that the City (1) tolerated the use of unreasonable force against citizens; (2) failed to discipline officers who violate the rights of citizens by using unreasonable

---

[5] A municipality cannot be held liable under § 1983absent an underlying constitutional violation by one of its officers.  See DiRico v. City of Quincy, 404 F.3d 464, 469 (1st Cir. 2005).  Here, Plaintiff's municipal liability claim fails because there is no evidence that the City had an unconstitutional policy or custom that caused such a violation.  The City leaves for another day whether an underlying constitutional violation actually occurred and in no way concedes that such a violation occurred here.

6

force; (3) failed to adequately supervise and investigate officers who are prone to use unreasonable force; and (4) failed to adequately train officers in the proper use of force. (Compl. ¶¶ 37(a)-(d).) No evidence supports these claims. The City addresses each theory in turn.

### 1. The City does not have a policy or custom of tolerating officers' use of unreasonable force.

Plaintiff first asserts that the City showed deliberate indifference to the rights of citizens by "tolerating" the use of excessive force by its officers. (Compl. ¶ 37(a).) Plaintiff does not expand on this conclusory allegation. Regardless, there is no evidence whatsoever that the City in any way "tolerated" such a policy or custom.

#### a. The City has no policy tolerating the use of unreasonable force.

The Boston Police Department maintains detailed policies regarding the circumstances in which force may be used, as well as the types of force that may be used, whether lethal (Rule 303), less-lethal (Rule 303A), or non-lethal (Rule 304). (SOF ¶ 71.) These policies further require officers to document the use of force. (SOF ¶ 73.) With regard to the use of non-lethal force, Rule 304 states that the Boston Police Department's policy is "to use only that amount of force that is reasonably necessary to overcome resistance in making an arrest or subduing an attacker." (SOF ¶ 66.) Rule 304 defines "Reasonable Amount of Force" as "the least amount of force that will permit officers to subdue or arrest a subject while still maintaining a high level of safety for themselves and the public." (SOF ¶ 67.)

Rule 304 also provides for investigation into the reasonableness of the use of force. (SOF ¶¶ 71-74.) Officers are required to report the use of force to a supervisor. (SOF ¶ 73.) The supervisor then investigates and submits the results of that investigation to the commanding officer and the Police Commissioner. (SOF ¶ 73.) In addition, the BPD Internal Affairs Division (IAD) investigates allegations of police misconduct; oversees investigations to ensure

7

that they are thorough and complete; analyzes complaint data; and proactively assists in the development of needed training modules. (SOF ¶¶ 74, 76.) An internal affairs complaint can be filed by making a complaint to a supervisor at any station 24 hours a day, by contacting IAD, by submitting a letter to IAD, or by submitting an online complaint form. (SOF ¶ 77.) IAD is immediately notified of complaints alleging brutality, death, or serious injury. (SOF ¶ 78.) Once a complaint is received, a complainant is interviewed by IAD as part of a required thorough investigation culminating in a written report. (SOF ¶ 77, 79.) IAD's report and recommendation are reviewed by the Police Commissioner and BPD Command Staff. (SOF ¶ 80.)

In addition to IAD, in 2007, the City's Mayor issued an executive order instituting a civilian review board, the Community Ombudsman Oversight Panel ("CO-OP"), to review internal affairs complaints and make recommendations to IAD. (SOF ¶ 84.) The CO-OP may review IAD findings of not sustained, exonerated and unfounded findings. (SOF ¶ 72.) IAD is also overseen by the BPD's Anti-Corruption Division. (SOF ¶¶ 81-83.) Finally, the Boston Police Department has a zero tolerance policy for untruthfulness in any report, during any sworn testimony, or internal interview (including IAD and anti-corruption interviews); termination is the presumptive disciplinary measure. (SOF ¶ 72.) In short, there is no evidence of a City policy of "tolerating" the use of unreasonable force; the record evidence indicates the exact opposite.

            **b.**      **The City has no custom of tolerating excessive force.**

Aside from City policies, there is no evidence that the City has a custom of tolerating officers' use of excessive force. To hold a municipality liable for maintaining an unconstitutional custom, a plaintiff must show both that the custom is attributable to the municipality and that the custom must have caused, and was the moving force behind, the deprivation of constitutional rights. See Bordanaro v. McLeod, 871 F.2d 1151, 1156 (1st Cir.

1989). To constitute a "custom," official action "must be so well settled and widespread that the policymaking officials of the municipality can be said to have either actual or constructive knowledge of it yet did nothing to end the practice." Id. Here, there is no evidence of such a "well settled and widespread" custom. ███████████████████████████████████████████████████████████████ (SOF ¶¶ 85, 94.) Moreover, Plaintiff has produced no evidence of incidents in which the City tolerated the use of excessive force. Plaintiff did not depose a single Boston Police Department decision-maker regarding the Police Department's policies or customs of investigating use of excessive force claims. Nor did Plaintiff retain an expert to review the Boston Police Department's policies or customs. Plaintiff relies solely on the Complaint's conclusory allegation that the City "tolerated" the use of excessive force ███████████████████████████████████████████████████████████████.

Even if the City had such a policy or custom, there is no evidence that any such policy or custom tolerating the use of excessive force actually caused Plaintiff's alleged deprivation of constitutional rights. Plaintiff has no evidence that the City's alleged "toleration" of excessive force was "closely related" to and, indeed, actually caused a police officer to use excessive force against Plaintiff. The City is entitled to summary judgment because it had no policy or custom of "tolerating" officers' use of excessive force that actually caused Plaintiff's alleged harm.

### 2. There is no evidence that the City inadequately disciplined officers.

Plaintiff likewise cannot prove that the City inadequately disciplined officers. Regarding Plaintiff's arrest, Murphy and Flaherty wrote use of force reports which were reviewed by their supervisor. (SOF ¶¶ 109-113.) ███████████████████████████████████

9

███████████████████████████████████████████████████

███████████████████[6] (SOF ¶¶ 114-17.) ███████████

███████████████████████████████████████████████████

████████████████████████████████████ (SOF ¶ 121-22.)

████████████████████████

Aside from this incident, Plaintiff has adduced no evidence that the City's disciplinary policies fell below professional standards or that the City had customarily ignored those policies. Plaintiff broadly asserts that the City failed to discipline officers who violate the rights of citizens by using unreasonable force. (Compl. ¶ 37(b).) But, "[i]n order to establish liability under a failure to discipline theory, the Plaintiff must show a persistent failure to discipline that demonstrates the existence of a custom or policy of Boston." Barker v. City of Boston, 795 F.Supp.2d 117, 124 (D. Mass. 2011) (dismissing failure to discipline claim because Complaint provided no other specific incidents in which Boston failed to discipline officers who used excessive force). Plaintiff must "show that the municipal action was taken with the requisite degree of culpability and must demonstrate a direct causal link between the municipal action and the deprivation of federal rights." Board of Cnty. Comm'rs of Bryan Cnty., Okl. v. Brown, 520 U.S. 397, 404 (1997). Finally, the First Circuit has declined to hold that "the failure of a police department to discipline in a specific instance is an adequate basis for municipal liability under *Monell*." Santiago v. Fenton, 891 F.2d 373, 382 (1st Cir. 1989).

---

[6] ████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████

Because a municipality may be held liable only for a "well settled and widespread" failure to train, supervise, or discipline, expert testimony is often used to establish that a City's conduct is substandard. See Fed. R. Evid. 702; Santiago, 891 F.2d at 382 (plaintiff must present evidence that training was "inferior by the standards of the profession"); Bordanaro, 871 F.2d at 1160 (plaintiff's expert on police procedures testified that rules and regulations were "deficient in almost every way"). Plaintiff here did not retain an expert, and there is no evidence that the City's disciplinary policies fell below professional standards.

███████████████████████████████████████████████████

███████████████████████████████████████████████████

█████████████████ ███ [7] █████████████████ (See Compl. ¶¶ 27-31.) This argument is meritless. █████████████████████████████████████

█████████████████████████████████████████ Moreover, the City has a policy of investigating citizen complaints and did so here (see infra Section II.B.3). That policy expressly provides for discipline in appropriate circumstances. (SOF ¶ 77 (citing Boston Police Department Rule 109 entitled "Discipline Procedure, Amended").) And, as a matter of law, the First Circuit has declined to hold that "the failure of a police department to discipline in a specific instance is an adequate basis for municipal liability under Monell." Santiago, 891 F.2d at 382. █████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

█████████████████████████████████ █████████████████

---

[7] As noted, Plaintiff admitted that Smigielski did not use any force whatsoever against him; indeed, Smigielski was not present at Plaintiff's arrest. (SOF ¶ 97.) Even assuming that the City had failed to discipline, train, or supervise Smigielski (which it did not), there is no evidence that this shortcoming led to an alleged violation of Plaintiff's constitutional rights by Murphy or Flaherty.

11

███████████████████████████████████████

███████████████████████████████████████

████████████████████████

Putting that aside, the mere existence of prior complaints against a police officer, without more, does not suffice to show a municipal custom of permitting or encouraging excessive force. See Eason v. Alexis, 824 F.Supp.2d 236, 246 (D. Mass. 2011); Trinidad v. City of Boston, No. 07-11679-DPW, 2010 WL 2817186, at *11 (D. Mass. Jul 16, 2010). For example, in Trinidad, the court determined that the City was not deliberately indifferent because prior incidents "were fully investigated" and because the officer was "adequately supervised and disciplined as a result thereof." 2010 WL 2817186, at *11. To impose liability, a "plaintiff must, at the very least, produce evidence that serious prior incidents similar to the alleged constitutional violation in question put the municipality on inquiry notice of an officer's danger to the public and that the police department's policy of ignoring or covering up those instances was 'the moving force behind' the alleged violation." Eason, 824 F. Supp. 2d at 246 (citing Young v. City of Providence, 404 F.3d 4, 25-28 (1st Cir. 2005)). Finally, as Eason noted, where an Internal Affairs Division "properly investigated those complaints and punished [the police officer] for those deemed to be credible," this action "further undercuts Eason's claim that officer misconduct was ignored and unpunished." Id.

████████████████████████████████████

████████████████████████████████████████████████

(SOF ¶¶ 85, 94.) ███████████████████████████████

████████████████████ See Eason, 824 F. Supp. 2d at 246. █████████

████████████████████████████████████

12

Moreover, the mere existence of complaints that were investigated but not substantiated cannot trigger Monell liability.  See Barker, 795 F.Supp.2d at 124; see also Rasmussen v. City of New York, 766 F.Supp.2d 399, 409 (E.D.N.Y. 2011) (evidence of multiple unsubstantiated complaints alleging excessive force does not establish a city custom of permitting or ignoring violations of constitutional rights); Phillips v. City of Fairfield, 406 F.Supp.2d 1101, 1116 (E.D. Cal. 2005) (mere existence of six prior excessive force complaints against an officer does not demonstrate a custom or permitting excessive force because each complaint was thoroughly investigated and officer was exonerated on each complaint).  ▮▮▮▮

▮▮ Moreover, Plaintiff has pointed to no specific instance in which the City failed to discipline an officer who was found to use excessive force.  Indeed, Plaintiff cannot offer any such evidence.  Plaintiff did not depose any BPD or IAD officials regarding disciplinary procedures or investigatory standards.  Nor has Plaintiff otherwise impugned the BPD's disciplinary policies or procedures, such as by retaining an expert to review them.

Overall, the record shows that the City maintains policies for investigating citizen complaints; ▮▮▮▮[8]▮▮▮▮

---

[8] ▮▮▮▮

13

### 3. There is no evidence that the City inadequately supervised or investigated officers.

Plaintiff next contends that the City is liable under Section 1983 because it inadequately supervised or investigated its officers.[9] (See Compl. ¶ 37(c).) This contention is not supported by the evidence. Failure-to-supervise claims are subject to the same stringent standard applied to failure-to-train claims. See Rodriques v. Furtado, 950 F.2d 805, 813 (1st Cir. 1991) (rejecting plaintiff's failure to supervise claim and applying failure to train standard from Bordanaro, 871 F.2d at 1158); Consolo v. George, 835 F.Supp. 49, 51 n.1 (D. Mass. 1993) ("Although the Supreme Court cases only discuss failure to train claims, this Court has held that the same standard is equally applicable to failure to supervise claims."). As the Supreme Court recently stated, "[a] municipality's culpability for a deprivation of rights is at its most tenuous where a claim turns on a failure to train." Connick, 131 S. Ct. at 1359. To succeed on such a claim, a plaintiff must show that the City had a policy or custom of failing to train or supervise. Next, plaintiff must prove "deliberate indifference," a "stringent standard of fault." Id. at 1359-60. Further, "[a] pattern of similar constitutional violations by untrained employees is 'ordinarily necessary' to demonstrate deliberate indifference for purposes of failure to train." Id. at 1360 (quoting Bryan Cnty., 520 U.S. at 409)). Finally, a plaintiff must show a "direct causal link between the municipal action and the deprivation" of rights. Bryan Cnty., 520 U.S. at 404.

#### a. There is no evidence that the City failed to supervise.

Primarily, there is no evidence that the City has a policy or custom of failing to supervise its police officers. Plaintiff has not deposed any City or Boston Police supervisors, nor has Plaintiff retained an expert to explain how the City's supervisory practices fell below

---

[9] Importantly, Count III is alleged against Defendant City of Boston, not BPD supervisors. Consequently, this case involves municipal liability for failure to supervise, not supervisory liability as that concept is explained in Ramirez-Lluveras v. Rivera-Merced, 759 F.3d 10, 19-22 (1st Cir. 2014).

professional standards.  Rather, the record shows that the City has policies in place regarding supervision of police officers.  These policies require officers to document the use of force and to submit that documentation to their supervisors.  (SOF ¶ 73.)  Supervisors are then required to conduct an investigation which is reviewed by the Police Commissioner.  (SOF ¶ 73.)  After that, IAD conducts its own independent investigation, which is then signed off on by BPD Command Staff.  (SOF ¶ 76-80.)  IAD itself is "checked" by the BPD's Anti-Corruption Division and the CO-OP Board.  (SOF ¶¶ 81-84.)  There is no evidence that these supervisory policies were substandard or that the City ignored them.

Second, Plaintiff has not shown that the City's alleged failure to supervise its police officers amounted to deliberate indifference.  "Deliberate indifference" requires proof that "a municipal actor disregarded a known or obvious consequence of his action," typically proven with evidence of a pattern of similar constitutional violations.  Bryan Cnty., 520 U.S. at 410.



But a "single instance of police misconduct in the field, standing alone, is insufficient to establish the endorsement of an informal policy or custom by the City."  McElroy v. City of Lowell, 741 F.Supp.2d 349, 354 (D. Mass. 2010); see Maldonado v. Fontanes, 568 F.3d 263, 273-75 (1st Cir. 2009).  (SOF ¶ 113.).  Plaintiff did not depose Lt. Meade and has no evidence that Lt. Meade's supervision was deficient.  Plaintiff's claim falls short.

15

Likewise, Plaintiff's allegation that unnamed supervisors did not investigate Plaintiff's injuries "despite a department policy" is meritless. Plaintiff was offered medical treatment in accordance with BPD policy but declined it. (SOF ¶¶ 45, 70.) Moreover, Plaintiff concedes that this alleged failure occurred <u>despite</u> a department policy (Compl. ¶ 26), thereby acknowledging that the City's policy <u>is</u> to supervise officers who use force and provide medical treatment. In any event, holding the City liable for an unnamed supervisor's alleged negligence would impermissibly engraft *respondeat superior* onto Section 1983 municipal liability. Plaintiff's attempt to infer a municipal custom from this single incident also fails, and there is no evidence that the City's failure to supervise <u>after</u> Plaintiff's arrest directly caused Plaintiff's injury.

### b. **There is no evidence that the City failed to investigate.**

Plaintiff also purports to allege another theory: that the City failed to investigate. (Compl. ¶ 37(c).) In the circumstances of this case,[10] a "well settled" and "widespread" policy or custom cannot be proven by a single incident alone. See <u>Bordanaro</u>, 871 F.2d at 1156; <u>Santiago</u>, 891 F.2d at 382 (demonstration of municipal policy also requires proof of more than just one allegedly inadequate investigation or disciplinary decision).

Here again, Plaintiff has adduced no evidence that the City had a policy or custom of failing to investigate officers; that the City was deliberately indifferent to complaints against officers; or that the City's deliberate indifference to complaints against officers caused a

---

[10] The Supreme Court has intimated that a single incident may give rise to municipal liability in limited circumstances not present here. See <u>Pembaur v. City of Cincinnati</u>, 475 U.S. 469, 480 (1986). In <u>Pembaur</u>, the Supreme Court concluded that "where action is directed by those who establish governmental policy the municipality is equally responsible whether that action is to be taken only once or to be taken repeatedly." <u>Id.</u> at 481. Here, Plaintiff has not identified any specific policies or any municipal policymakers, nor has Plaintiff made any attempt to link the alleged actions of Murphy or Flaherty to a particular policy established by a municipal policymaker. In short, "[w]hile the existence of a municipal custom or policy may be evidenced by the repetition of unlawful acts by officers, a single instance of police misconduct in the field, standing alone, is insufficient to establish the endorsement of an informal policy or custom by the City." <u>McElroy</u>, 741 F.Supp.2d at 354.

16

deprivation of Plaintiff's rights. See Febus-Rodriguez v. Betancourt-Lebron, 14 F.3d 87, 94 (1st Cir. 1994). Rather, the undisputed evidence shows that the City maintained detailed policies and procedures for investigating citizen complaints against officers: officers are required to submit use of force reports to their supervisors, who then investigate the incident. (SOF ¶ 73.) In turn, that investigation is reviewed by the Police Commissioner. (SOF ¶ 73.) Next, the report and investigation are forwarded to IAD, Human Resources, and the BPD's Training and Education Division. (SOF ¶ 74.) IAD thoroughly investigates incidents of alleged police misconduct by conducting interviews and reviewing documents. IAD then issues written findings and a recommendation. (SOF ¶ 79.) Prior to an IAD report being finalized, the Police Commissioner and BPD Command Staff sign off on it. (SOF ¶ 80.) Finally, both the Anti-Corruption Division and the CO-OP Board oversee IAD's work. (SOF ¶¶ 81-84.)



███ (SOF ¶¶ 85-96 ███ 109-122 ███.) ███

███ (SOF ¶¶ 85-96.) Plaintiff has no evidence that IAD failed to thoroughly investigate citizen complaints or that IAD's investigations were inadequate or substandard. Where the evidence shows that the City thoroughly investigated complaints against officers, Plaintiff cannot, as a matter of law, succeed in proving that the City was deliberately indifferent for failing to investigate.

### 4. There is no evidence that the City inadequately trained its police officers.

Finally, Plaintiff asserts that the City failed to train its police officers. (Compl. ¶ 37(d).) Here again, there is no evidence that the City failed to train its officers; rather, the undisputed evidence shows that the City properly trained its officers and that it was not deliberately indifferent to the rights of citizens. In Connick v. Thompson, the Supreme Court stated the standard for a failure to train claim:

> In limited circumstances, a local government's decision not to train certain employees about their legal duty to avoid violating citizens' rights may rise to the level of an official government policy for purposes of § 1983.  A municipality's culpability for a deprivation of rights is at its most tenuous where a claim turns on a failure to train. . . .  To satisfy the statute, a municipality's failure to train its employees in a relevant respect must amount to "deliberate indifference to the rights of persons with whom the [untrained employees] come into contact." Canton, 489 U.S., at 388. . . . "[D]eliberate indifference is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action." Bryan Cnty., 520 U.S., at 410.

131 S. Ct. at 1359.  Moreover, to sustain a claim for municipal liability under a failure to train theory, a plaintiff must demonstrate that "the identified deficiency in a city's training program [is] closely related to the ultimate injury."  Young, 404 F.3d at 26 (quoting City of Canton v. Harris, 489 U.S. 378, 388-391 (1989)).  Deliberate indifference amounts to showing that the alleged violation of plaintiff's federal rights was a "highly predictable consequence of a failure to equip law enforcement officers with specific tools to handle recurring situations." Bryan Cnty., 520 U.S. 397, 409 (1997).  Therefore, to show deliberate indifference, Plaintiff must show that the City disregarded a known or obvious risk of serious harm from its alleged failure. See id.; Young, 404 F.3d at 28.

Moreover, "[s]howing that a single individual received inadequate training is insufficient for municipal liability to attach; the training program as a whole must be found faulty." Calvi v. Knox Cnty., 470 F.3d 422, 429 (1st Cir. 2006) (citation omitted). More than mere evidence of officer error is needed. See City of Canton, 489 U.S. at 391 ("[A]dequately trained officers occasionally make mistakes; the fact that they do says little about the training program or the legal basis for holding the city liable."). Municipal liability is not available even when a particular officer may be trained unsatisfactorily because it could be due to the officer's shortcomings, not training. Id. at 390-91. Municipal liability does not attach simply because training is imperfect or not implemented in the preferred form. See Young, 404 F.3d at 27.

Here, the undisputed evidence is that BPD officers receive use of force training. All BPD officers must graduate from Boston Police Academy, where they complete a course of instruction on use of force approved by the BPD's Training and Education Division. (SOF ¶ 68.) That course is part of an in-service training and includes practical and written test components. (SOF ¶ 68.) Moreover, when the BPD adopts new use-of-force practices, officers must undergo additional training. (SOF ¶ 68.) ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ SOF ¶¶ 2, 10.)

Plaintiff has not identified a deficiency in the City's training program, such as by retaining an expert to evaluate the City's training program to determine that it fell below professional standards. See Lucas v. City of Boston, No. 07-10979-DPW, 2009 WL 1844288, at *29 (D. Mass. June 19, 2009) (insufficient evidence that BPD's training was inadequate because "Plaintiffs have not, for example, offered any expert evidence analyzing the City's policies and determining them to be inadequate under the standards of the profession"). Nor can Plaintiff

19

produce any evidence that BPD's trainings were subpar.  Put simply, the evidence does not show a policy or custom that would lead a reasonable jury to conclude that there was a failure to train.

Finally, Plaintiff has no evidence suggesting that the City was deliberately indifferent to its citizens' constitutional rights by failing to train its law enforcement officers.  "'[D]eliberate indifference' is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action."  Bryan Cnty., 520 U.S. at 410.  Indeed, the First Circuit has held that evidence that police officers received only four hours of training with regard to constitutional issues did not establish a "'conscious' policy to train inadequately."  Santiago, 891 F.2d at 381.  Here, there is no evidence that the City's training was deficient or that the City was deliberately indifferent to a deficiency in training.  Finally, Plaintiff has no evidence that a lack of training "actually caused" Plaintiff's claimed injury.

### III.   CONCLUSION

Wherefore, for the foregoing reasons, the City respectfully requests that the Court enter summary judgment in its favor on Count III of Plaintiff's Complaint.

Dated: June 30, 2015

Respectfully submitted,
DEFENDANT CITY OF BOSTON
Eugene L. O'Flaherty, Corporation Counsel

By its attorneys:

/s/ John J. Boscia
John J. Boscia (BBO# 679357)
Amy Bratskeir (BBO# 662034)
Assistants Corporation Counsel
City of Boston Law Department
City Hall, Room 615
Boston, MA 02201
(617) 635-4031 (Boscia)
(617) 635-4017 (Bratskeir)
John.Boscia@boston.gov
Amy.Bratskeir@boston.gov

**CERTIFICATE OF SERVICE**

I hereby certify that on this day, a copy of this document filed through the CM/ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing and paper copies will be sent to those indicated as non-registered participants.

| 6/30/15 | /s/ John J. Boscia |
|---|---|
| Date | John J. Boscia |